HARWOOD, Justice
(concurring specially).
I concur with the rationale and result of the main opinion. I write separately to comment upon the first two sentences of the final paragraph of the opinion, reading:
“Any liability from which Dr. Corbin was released did not include the potential liability for performing his duties as Wilford’s treating physician. He remained a doctor while serving as medical director; thus, he could not escape the responsibilities of a physician when treating a patient.”
I agree that certain separate and distinct roles and capacities can impose on the person acting in those roles and capacities separate and distinct duties to a third party. A guardian, conservator, accountant, attorney, or any other fiduciary owes specialized duties to his or her ward or client. Along with numerous other legal capacities recognized by the law as carrying with them specialized duties and obligations, a physician owes special and legally prescribed duties to his or her patient.
*616 Based on various items contained in the record, including portions of the deposition of Dr. Corbin, it may be reasonably inferred that Dr. Corbin had a physician-patient relationship with Wilford Smith (“Wilford”) before the date of the incident involved in this case, August 13, 1997. Dr. Corbin testified in his deposition that on that date he was already present at the Bill Nichols State Veterans Home “on the third floor making rounds. I was on call ... just making regular monthly rounds. I visit each patient once a month.” When asked during his deposition if that was something that he was “doing as the medical director or as the patient’s physician,” he answered, “That would be more professional service as the — as the caregiver or as the primary caregiver, yeah.” For such services he would bill Medicare for the professional services rendered, on an individual basis. Dr. Corbin further testified that he “was the physician for Bill Nichols State Veterans Home [and that Wilford Smith] was a resident there.” Accordingly, there is the reasonable inference that Dr. Corbin had a preexisting relationship with Wilford as his physician and that he therefore owed Wilford certain duties of professional care. In connection with his involvement in the incident relating to Wilford, Dr. Corbin testified, “I was called down there in an emergency situation,” not otherwise being scheduled to see Wilford that day.
As the main opinion states: “We are not told what [Dr. Corbin’s] specific responsibilities as medical director entail.... ” 842 So.2d 614. Within the various excerpts from Dr. Corbin’s deposition that were made a part of the record, we find clear indications that his contract as medical director was consulted by the parties during his deposition. At one point in the deposition, when plaintiffs counsel asked Dr. Corbin if, as the medical director, he had “a responsibility or duty, if you are called in an emergency like this, to go see the patient,” Dr. Corbin’s counsel objected on the basis that “the document speaks for itself.” Dr. Corbin then answered, “[T]he duty for the medical director, I mean, like he says, is defined in this contract. So if it falls under that, yeah.” Plaintiffs counsel then responded, “Well, I am reading this line. ‘Accordingly, physician responsibilities as medical director shall include but not be limited to the following.’ So it’s a pretty broad scope, isn’t it?” Dr. Corbin answered, “Y’all can — you know — y’all should determine what the contract means.” Thus it appears that Dr. Corbin’s contract as medical director specified certain “physician responsibilities as medical director” but we are left in the dark as to what those responsibilities might be. The contract itself is not a part of the record, and its content is not otherwise revealed.
Certainly it is possible that Dr. Corbin contractually owed certain duties to Wilford in his capacity as medical director and yet owed certain other additional and separate duties to Wilford in his capacity as Wilford’s personal physician. While I agree with the main opinion that “[a]ny liability from which Dr. Corbin was released did not include the potential liability for performing his duties as Wilford’s treating physician,” I consider the language of the release to be such that Dr. Corbin was released from any claim premised on the breach of a duty he owed Wilford as medical director, independent of the fact that there would be an overlap between that duty and a separate, but identical, duty that Dr. Corbin owed Wilford as his treating physician. Accordingly, to the extent that any particular claim pending against Dr. Corbin in his capacity as Wilford’s treating physician is predicated upon a duty that exactly coincides with, and simply duplicates, a duty Dr. Corbin otherwise owed Wilford as the medical di *617 rector, that claim would be foreclosed by the release. That is because the breach of the duty under such a scenario would be the same regardless of the capacity out of which the duty arose. Stated another way, it would be only those duties Dr. Corbin owed Wilford as his physician in addition to those he owed him as medical director that would survive the comprehensive scope of the language of the release describing the claims being extinguished as to Dr. Corbin. The “pro tanto release” expressly released and forever discharged the “medical director” with respect to “any and all claims, known or unknown, for any liability now existing or which may hereafter arise on the part of said released parties for the incident which is the basis for the above styled action including but not limited to the personal injury and/or death of Wilford Smith ...,” reserving and excepting only those claims “against the remaining defendants including but not limited to Dr. Timothy Corbin solely in his capacity as the treating or attending physician of Wilford Smith....” A claim based upon an alleged breach of a duty owed by Dr. Corbin to Wilford on account of Dr. Corbin’s role as the medical director would be fully extinguished by the release; that claim could not thereafter be characterized as a reserved and surviving claim admittedly based on a breach of the exact same duty, just because Dr. Corbin also owed that duty to Wilford as his treating physician.